CHASEZ, Judge.
This is an action by Dr. J. Lawrence Hill, Jr., to recover the sum of $5,600.00, which he posted as a deposit pursuant to a *849 contract to purchase certain real estate from John E. Bacon. The defendants are John E. Bacon, prospective vendor of the property and his real estate agent, Gandolfo Realty Company. Plaintiff in his petition alleged that the necessary mortgage financing was unobtainable either by the agents involved or by petitioner himself, despite diligent efforts made and that, under the terms of the agreement of May 18, 1962, the contract fell. The defendants answered, generally denying plaintiff’s demands and reconvened for a real estate commission in the amount of $3,360.00, and attorney’s fees of $1,500.00. The trial court entered a judgment for the plaintiff on his main demand and dismissed defendants’ reconventional demand.
The agreement entered into between the parties was dated May 18, 1962, for the purchase of the property and building bearing the municipal number 1023 Chartres Street, New Orleans, Louisiana. The agreement was executed on the standard form of the New Orleans Real Estate Board and the pertinent provisions thereof for consideration in this suit, read as follows:
“Property sold and purchased subject to all title and zoning restrictions on record, or by laws or ordinances for the sum of Fifty-Six thousand dollars ($56,000.00) Dollars, on the terms of Six Thousand cash balance as follows: 1st mort. approx. $22,400 @ 7% 15 yrs; 2nd mort. assumed of approx. $24,000 @7% 10 yrs; 3rd mort. approx. $3,600 @ 7% 5 yrs. carried by seller; total loans not to exceed $50,000.
“This sale is conditioned upon the ability of purchaser to borrow upon this property as security the sum of $50,000.00 by a mortgage loan or loans at a‘rate of interest not to exceed 7% per annum, interest and principal payable on or before 15-10-5 years in equal (monthly) X (quarterly) _ (semi-annual) _ (annual) _ installments.
“Should purchaser, seller or agent be unable to obtain the loan stipulated above within 10 days from acceptance hereof, this contract shall then become null and void and the agent is hereby authorized to return the purchaser’s deposit in full. Commitment by lender to make loan subject to approval of title shall constitute obtaining of loan.
* * * * *
“All proper and necessary certificates and revenue stamps to be paid by seller. Cost of survey by purchaser.”
As hereinabove stated, plaintiff contends that he diligently tried to secure the necessary financing under the terms of the agreement and was unable to do so; therefore, he pleads that the contract falls by virtue of its own terms. Defendants, on the other hand, contend that financing was available and that plaintiff did not in good faith try to secure the necessary financing.
The record reflects that the plaintiff did apply to several homestead associations in the City of New Orleans to secure the financing contemplated by the contract. Particularly did he apply to the Investors Homestead Association on May 24, 1962, for the necessary funds for a first mortgage at 6Yz% interest for 20 years. On June 1, 1962, the Association declined the loan, writing the plaintiff as follows:
“Dr. J Lawrence Hill,
906 Royal Street,
New Orleans, Louisiana.
“Dear Dr. Hill:
“I have had the opportunity to discuss your application with the members of my Executive Committee and wish to advise that the request made by you for a 20 year loan at 6is not acceptable to the Association.
“We will, however, consider a loan of $22,400.00, on terms of 15 years, 7% interest, with a 2% prepayment penalty clause in the event the loan is repaid within the first year, and a 1% *850 prepayment clause covering the second year.
“If the above mentioned meets with your approval, please let me know.
Very truly yours,
/s/ F. A. Plough
President.”
The plaintiff testified that he subsequently reapplied for a loan at the Investors Homestead Association for the sum of $22,-400.00, with interest at 7%, secured by mortgage, payable in IS years and that this loan was likewise declined by the Investors Homestead Association by letter of June 22, 1962, as follows:
“Dr. J Lawrence Hill,
906 Royal Street,
New Orleans, Louisiana
“Dear Dr. Hill:
“I have submitted your recent application for a loan on the property 1023 Chartres Street. After giving consideration to the matter, the Executive Committee recommended that the loan not be approved.
Very truly yours,
/s/ F. A. Plough
President.”
The plaintiff also stated that he attempted to get a loan on the property secured by first mortgage from the Union Homestead, which was refused and that Mr. J. Gandolfo attempted to get a loan from Dixie Homestead Association, without avail.
It is apparent from the activity of the plaintiff that his interpretation of the agreement was that he had to raise the sum of approximately $22,400.00, to meet the first mortgage existing on the property, assume the second mortgage of approximately $24,000.00, and execute a third mortgage to be carried by the defendant of approximately $3,600.00. He states that conversations with the President of the Investors Homestead Association led him to believe that this Association, which was the holder of the first mortgage on the property for the sum of $22,400.00, might take action to foreclose this mortgage since it was in arrears; hence since the contract of purchase did not state specifically that this first mortgage was to be assumed, he undertook to raise the money, with the results hereinabove set forth.
However, the defendants and reconven-ors contend that the first and second mortgages on the property were to be assumed by the purchaser and a third mortgage for the sum of $3,600.00 was to be executed by purchaser and carried by the owner, John C. Bacon; and that as the plaintiff did not make diligent and bona fide efforts to finance the obligation under the purchase agreement, he is in default under the terms of the agreement. The record likewise reflects that the defendants, John C. Bacon and Gandolfo Realty Company attempted to make a legal tender of this property to the plaintiff, Dr. J. Lawrence Hill, Jr., on the 2nd day of July, 1962. Dr. J. Lawrence Hill, Jr., pursuant to notice, appeared at the office of defendants’ notary able and willing to purchase the property; he claims, however, that the tender made to him was not legal, primarily for the reason that there were no mortgage or conveyance certificates presented to him when he requested them to determine the condition of the property (and defendants admit that none were procured) nor had the necessary written consent of the holders of the mortgages existing on the property been secured in order to permit him to safely assume said mortgages, and particularly the one held by the Investors Homestead Association.
We are of the opinion that the judgment of the District Court in favor of the plaintiff and defendant in reconvention and against the defendants and plaintiffs in re-convention, is correct and should be affirmed for we are convinced that:
(1.) Assuming that the purchase agreement required the plaintiff, Dr. J. *851 Lawrence Hill, Jr., to raise the funds and execute a new mortgage in order to pay the first mortgage due and owing to the Investors Homestead Association, the plaintiff did make a proper, diligent and bona fide effort to properly finance the sale and since those efforts were unsuccessful, the contract of purchase fell under its own terms, as it provides that should purchaser he unable to obtain the loan stipulated within 10 days from acceptance the contract would then become null and void and the agent authorized to return the purchaser’s deposit in full.
(2.) If it is to be assumed that the first and second mortgages existing on the property did not have to be refinanced but both were to be assumed, we are of the opinion that the plaintiff, Dr. J. Lawrence Hill, Jr., correctly refused to accept the alleged legal tender of title made to him on July 2, 1962, because of the complete absence of the usual and necessary certificates normally to be attached to acts of sale, particularly the mortgage and conveyance certificates; that, likewise, since the act presented to him was one in which all mortgages existing on the property would be assumed and paid according to their tenor, the absence of the necessary written consent of the holders of said mortgages authorizing Dr. J. Lawrence Hill, Jr., to formally assume their payment was fatal to the transaction. We believe that the consent of the mortgage holders is of importance in this latter instance due to the provisions of the title held by defendant, John C. Bacon, which is subject to the mortgage of the Investors Homestead Association and which provides that:
“ * * * The purchaser hereby binds and obligates himself not to sell, alienate or encumber the said property to the prejudice of these presents.
* * * * *
“Not to sell or transfer the said property without the written consent of the Association, and then only if the transferee shall specifically assume all of the obligations of the purchaser herein, including the mortgage herein granted.
* * * * *
“In the event the purchaser should violate any of the foregoing conditions, or any other condition imposed upon him under this act, or under the Charter and By-laws of the Association; or should the purchaser fail to promptly and fully comply with any of his obligations hereunder, or under the Charter and By-laws of the Association, or upon the happening of any of the events herein mentioned, the Association may, at its option, without notice, demand, or putting in default, at once declare all of the purchaser’s obligations immediately due and exi-gible ; and the Association may proceed immediately to cause the property herein described and all buildings and improvements now or hereafter erected thereon, to be seized and sold, without the necessity of demand or of service of notice of demand for payment, by executory or other legal process issued by any court of competent jurisdiction; or proceed to the enforcement of its claim, vendor’s lien, pledge and mortgage in any other lawful manner. * * * ”
We further believe it to be the duty of the defendant to secure such consents as part of his title. As stated, plaintiff rejected the tender of title and we believe properly so. LSA-R.S. 9 :2928 provides:
“No notary of [sic] sheriff of the Parish of Orleans shall pass any act conveying real property located in the Parish of Orleans without first obtaining from the register of conveyances a certificate showing that the vendor has not alienated the property. The certificate shall contain a description of the property and shall be annexed to the act.
“Any notary or sheriff of the Parish Orleans who violates this Section shall *852 be fined not less than two hundred and fifty dollars nor more than five hundred dollars.”
LSA-C.C. 3364 provides:
“Every notary who shall pass an act of sale, mortgage or donation of an immovable, shall he bound to obtain from the office of mortgages of the place where the immovable is situated, a certificate declaring the privileges oí mortgages which may be inscribed on the object of the contract, and to mention them in his act, under penalty of damages towards the party who may suffer by his neglect in that respect.”
LSA-R.S. 9:5183 provides that the parties to an act of sale may waive the mortgage certificate; however, there is no comparable statute allowing waiver of the conveyance certificate in Orleans Parish.
 While plaintiff had the right to waive mortgage certificates, he was under no duty to do so and in this case did not choose to do so. Since the sale was being passed before vendor’s notary, the production of these certificates was the proper thing to do under the circumstances. A proper tender of title should include the necessary certificates. Faisans v. Moore, 11 La.Ann. 741 (1856); Hodge v. Moore, 3 Rob. 400 (1843); Stroudback v. Singer, 2 Peltier’s Orl.App. 74 (1918).
Furthermore, there was no consent of the two mortgagees to an assumption of the mortgages by the plaintiff. The title of the vendor to the property herein is in the form of a credit sale and mortgage. The penalty provided in the breach of the above quoted stipulations appearing in said act is the acceleration of the note secured by the mortgage, resulting in it becoming due at once. The mortgage held by the Investors Homestead Association, if the sale had been completed without its consent would have become immediately due; and this would have been to the detriment of the purchaser.
Having concluded that the plaintiff was in good faith in trying to secure financing under the terms of his agreement, and would have taken title to the property on the basis of assuming the mortgages and executed the third mortgage had the property been properly tendered, we are of the opinion that the decision of the Trial Court is correct. Therefore, the judgment is affirmed at the cost of defendants and plaintiffs in reconvention.
Affirmed.